UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
U.S. SPECIALTY INSURANCE COMPANY,          :
                                            :
                               Plaintiff,                :        11 Civ. 3736 (HB)
                                            :
        -against-                            :        OPINION &
                                            :        ORDER
LIBERTY PARTNERS L.P., LIBERTY              :
PARTNERS HOLDINGS 14, LLC,                  :
LIBERTY CAPITAL PARTNERS, INC.,             :
                                            :
                               Defendants.              :
------------------------------------------------------------------------x

**Hon. HAROLD BAER, JR., District Judge:**

       Before this Court are two motions filed by Plaintiff U.S. Specialty Insurance Company ("U.S. Specialty") against Defendants Liberty Partners L.P., Liberty Partners Holdings 14, LLC, and Liberty Capital Partners, Inc. (collectively, the "Liberty Entities"). The first is a Motion to Dismiss, Stay, or Transfer to the Central District of California. The second is a Motion to Strike the Second Cause of Action. For the following reasons the Motion to Dismiss, Stay, or Transfer is denied and the Motion to Strike is granted.

## I. BACKGROUND

       U.S. Specialty sold to the Liberty Entities a Private Equity Professional and Management Liability Insurance policy no. U709-60208 effective from April 20, 2009, to April 20, 2010 (the "Policy"). The Policy provides $10,000,000 in coverage and obligates U.S. Specialty to pay, on behalf of the Liberty Entities, "Loss arising from Claims for Wrongful Acts in the performance of Private Equity Activities."[1]

       Before the Policy took effect, on March 10, 2009 Mary Ellen Hardin, a California resident, filed an action in Orange County Superior Court in California against Community Dental Services, Inc. ("CDS"), a California based company in which the Liberty Entities own a controlling interest. *Hardin v. Cmty. Dental Servs., Inc., et al.*, No. 30-2009-00119756 (JST) (the "*Hardin* Action"). In Hardin's Third Amended Cross-Complaint against CDS, the Liberty Entities and other parties not relevant here, Hardin alleged that the Liberty Entities committed certain wrongful acts, and she sought damages in an amount in excess of $60,000,000. The

Liberty Entities defended and incurred fees and costs for services by their attorneys in the California offices of Manatt, Phelps & Phillips, LLP.  A dispute arose between U.S. Specialty and the Liberty Entities regarding which fees and costs U.S. Specialty was obligated to pay under the Policy.  Although U.S. Specialty contends that it has no obligations to pay defense costs, it has made some payments toward satisfying the Liberty Entities' claim.

U.S. Specialty filed an action in this Court on June 1, 2011 seeking a Declaratory Judgment to clarify the rights and obligations of the parties under the Policy (the "New York Action").  Two weeks later on June 17, 2011 the Liberty Entities filed a complaint in the Orange County Superior Court of California seeking a Declaratory Judgment in their favor as well as damages for breach of contract and bad faith (the "California Action").

Trial began in the *Hardin* Action on July 13, 2011, and during a mediation conference in California the parties settled effective July 25, 2011.  Then on August 5, 2011, the Liberty Entities moved to dismiss the New York Action, and on August 19, 2011, U.S. Specialty amended its Complaint to include a second cause of action for unjust enrichment, indemnity, contribution and breach of contract.  On September 2, 2011 the Liberty Entities filed the present motions and oral argument was held on October 25, 2011.

## II. MOTION TO DISMISS, STAY, OR TRANSFER

The Liberty Entities argue that this case should be transferred to the U.S. District Court for the Central District of California ("Central District") under Rule 12(b)(3) and 28 U.S.C. § 1404(a), or in the alternative, the Court should dismiss or stay the action pending the resolution of the California Action pursuant to Rule 12(b)(1) and (3) and the abstention doctrine.  They raise three primary issues which I will address in turn: (A) transfer under 28 U.S.C. § 1404; (B) application of the first-filed rule; and (C) the abstention doctrine.

A.   Transfer under 28 U.S.C. § 1404

A district court may exercise its discretion to transfer venue "for the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a).  Assuming that the action could have been brought in the alternate forum, i.e., jurisdiction and venue are proper, courts consider a host of factors of convenience and fairness, including: "(1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6)

---

[1] "Loss," "Claim," "Wrongful Act" and "Private Equity Activities" are each terms defined in the Policy.

the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties." *New York Marine and Gen. Ins. Co. v. Lafarge North America, Inc.*, 599 F.3d 102, 112 (2d Cir. 2010) (internal citation and quotation marks omitted). The party moving for a change of venue bears the burden of clearly establishing that transfer is appropriate, and the plaintiff's choice of forum should not be disturbed unless the balance of convenience and justice weigh heavily in favor of defendant's forum. *The Bank of New York v. First Millennium, Inc.*, No. 06 Civ. 13388, 2007 WL 1404433, at *4 (S.D.N.Y. May 09, 2007) (citing *Citigroup, Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 561 (S.D.N.Y. 2000)); *see also New York Marine and General Ins. Co.*, 599 F.3d at 114 ("It is therefore appropriate that the district courts in our Circuit have consistently applied the clear and convincing evidence standard in determining whether to exercise discretion to grant a transfer motion.").

Although U.S. Specialty does not dispute that the action could have been brought in the Central District, the Liberty Entities cannot meet their burden to clearly establish that a transfer of venue is appropriate. Of the factors courts consider when deciding whether to transfer venue, the "plaintiff's choice of forum is given considerable weight." *Posven, C.A. v. Liberty Mut. Ins. Co.*, 303 F. Supp. 2d 391, 405 (S.D.N.Y. 2004). However, where the plaintiff chooses a forum that is "neither the district of its residence, nor the locus of the operative facts in the case, this choice is considerably less important." *Id.* (citation omitted).

Here, notwithstanding the Liberty Entities' argument to the contrary, U.S. Specialty's choice of forum is entitled to some deference. The Policy was negotiated and executed in New York and notice of the claim in the *Hardin* Action came to U.S. Specialty's New York claims representative. Additionally, although the Liberty Entities are either organized or incorporated under the laws of Delaware, they have principal places of business in New York. In sum, it is logical to accord plaintiff's choice of forum some weight.

Perhaps the most compelling argument that the Liberty Entities make in favor of transferring the case concerns the locus of operative facts and the convenience of witnesses. A consideration of these factors first requires identifying the central dispute in this case, which itself is in dispute. The Liberty Entities argue that this case is principally about a factual dispute regarding the amount of defense costs that U.S. Specialty owes to the Liberty Entities under the Policy in connection with the *Hardin* Action. Under this view, the locus of operative facts would seem to arise out of events involving the work performed by the attorneys in California

3

and the relevant witnesses are presumably located in California. On the other hand, U.S. Specialty argues that this case is principally about whether the Liberty Entities violated the conditions precedent to coverage under the Policy and that the necessary witnesses are in New York where the Policy was negotiated and executed. The Liberty Entities counter that even if these were the core coverage issues, which the Liberty Entities dispute, these issues all depend on acts or omissions by the parties in California. They further contend that U.S. Specialty's arguments are more appropriately categorized as defenses to a claim for breach of contract.

Although I do not disagree that U.S. Specialty's arguments regarding conditions precedent may be considered defenses in a breach of contract case, U.S. Specialty filed this action seeking a declaratory judgment and its arguments regarding coverage issues raise at least one central issue of the propriety of coverage under the Policy. If, at the appropriate time, I determine that U.S. Specialty is indeed obligated to pay all or some substantial part of the costs to which the Liberty Entities claim they are entitled, then the locus of operative facts may shift to those events that took place in California. For the moment the central issue in dispute is a legal issue and it relates to a New York contract.

        B.        <u>Application of the First-Filed Rule</u>

The Liberty Entities also argue that no deference should be given to the fact that U.S. Specialty filed the New York Action before the Liberty Entities filed the California Action. Where two lawsuits involving the same parties and the same issues are pending in two different federal courts, the "first-filed rule" creates a presumption that the case filed earliest will take priority unless either the balance of conveniences or special circumstances favor the second-filed action. *Employers Ins. of Wausau v. Fox Entm't Group, Inc*., 522 F.3d 271, 274-75 (2d Cir. 2008) (internal quotation marks and citation omitted). As noted, the conveniences of witnesses is, at best, unclear at this stage of the litigation. Special circumstance are rare and exist, for instance, where the first-filed lawsuit is an improper anticipatory declaratory judgment action filed in response to a direct threat of litigation or where the first-filing plaintiff engages in some manipulative or deceptive behavior evidencing that his entire motivation was forum shopping. *Id.* at 275-76; *see also Ontel Prods., Inc. v. Project Strategies Corp*., 899 F. Supp. 1144, 1150 (S.D.N.Y. 1995) ("Where a party is prepared to pursue a lawsuit, but first desires to attempt settlement discussions, that party should not be deprived of the first-filed rule's benefit simply because its adversary used the resulting delay in filing to proceed with the mirror image of the

4

anticipated suit.")  Here, the Liberty Entities contend that U.S. Specialty purposefully lulled them into thinking that they were bent on settling the fee dispute and then turned around and filed the New York Action.  A careful review of the correspondence fails to convince me that this was the case.  Neither contention can prevail on this record, and the motion to transfer is denied.

        C.        <u>The Abstention Doctrine</u>

The Liberty Entities argue that if this Court does not transfer this case to the Central District, it should at least dismiss or stay the action under the doctrine of abstention in light of the parallel California Action.  Federal courts may abstain from hearing state law based actions under the Declaratory Judgment Act in deference to state court actions raising similar issues. *See, e.g., Winterthur Int'l Am. Ins. Co. v. Pepsico, Inc.*, No. 01 Civ. 9132, 2002 U.S. Dist. LEXIS 8511, at *7 (S.D.N.Y. May 13, 2002) (granting Pepsico's motion to stay in favor of a state action that was more comprehensive in scope where the parties sought more than declaratory relief and the federal action involved state law issues only); *Commercial Underwriters Ins. Co. v. Glowmaster Corp.*, 105 F. Supp. 2d 268, 269-70 (S.D.N.Y. 2000) (dismissing the declaratory judgment action because a subsequently filed New Jersey action was "a parallel proceeding involving the same issues and the same parties[, t]he claims in both actions involve no questions of federal law, and insurance regulation is a matter of particular concern to state governments"); *see also Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Turbi de Angustia*, No. 05 Civ. 2068, 2005 U.S. Dist. LEXIS 18141 (S.D.N.Y. Aug. 23, 2005); *Travelers Indem. Co. v. Philips Elecs. N. Am. Corp.*, No. 02 Civ. 9800, 2004 U.S. Dist. LEXIS 1298 (S.D.N.Y. Feb. 3, 2004).

As the Supreme Court has stated: "'ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties.'"  *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995) ("Wilton") (quoting *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942) ("Brillhart")).  The Supreme Court stated in *Wilton* that in determining whether to abstain in favor of a state court action, federal courts should consider: (1) the scope of the pending state proceeding and the nature of defense available there; (2) whether the claims of all parties can satisfactorily be adjudicated in the state proceedings; (3) whether the necessary parties have been joined; (4) whether such parties are

5

amenable to process in the state proceeding; (5) avoidance of duplicative proceedings; and (6) avoidance of forum shopping. *Id.* at 281, 283.

The Liberty Entities argue that the scope of the California Action is broader than that of the New York Action and the California courts can satisfactorily adjudicate all claims because there are only state claims at issue and the relevant parties have been joined and are amenable to process. U.S. Specialty argues that because the California Action was removed to federal court, the premise for abstention (i.e., a parallel state action) is no longer viable.

There is currently a motion for remand pending in the California Action, and at the time the present motion was fully briefed, a hearing was scheduled to take place on November 7, 2011 on the motion for remand. If the motion for remand were granted, then principles of abstention would likely favor staying or dismissing the New York Action pending resolution of the California Action, which would proceed in state court. However, on November 2, 2011, the Honorable Josephine Staton Tucker, presiding over the California Action, granted an application to continue the November 7, 2011 hearing pending my decision on the present motion and rescheduled the hearing for December 12, 2011. Life is too short for a perpetual game of staying one action in favor of another, and I see no reason not to move forward expeditiously on the case before me. Therefore, I will not stay or dismiss this case in favor of the California Action.

### III. MOTION TO STRIKE

The Liberty Entities move to strike the Second Cause of Action under Rule 12(f), which allows the court to "strike from a pleading … any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). In the Second Cause of Action in the Amended Complaint, U.S. Specialty advances theories for unjust enrichment, indemnity, contribution and breach of contract. These theories essentially amount to a claim that U.S. Specialty overpaid the Liberty Entities for reimbursements owed under the Policy, and U.S. Specialty seeks restitution of those amounts plus interest.[2]

The Declaratory Judgment Act provides that "[f]urther necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against

---

[2] In its motion papers, U.S. Specialty argues that its claim for breach of contract is based on the theory that the Liberty Entities breached the Policy by violating the cooperation provision, consent to engage in settlements provision and the no assignment provision, which purportedly led to U.S. Specialty incurring extra costs. However, U.S. Specialty abandoned this theory at oral argument when it conceded that the entirety of its second cause of action is premised purely on a theory of restitution arising out of its "entitlement to, in addition to a declaratory

any adverse party whose rights have been determined by such judgment." 28 U.S.C. § 2202; *see also Powell v. McCormack*, 395 U.S. 486, 499 (1969) ("A declaratory judgment can then be used as a predicate to further relief"); *Fred Ahlert Music Corp. v Warner/Chappell Music*, 155 F.3d 17 (2d Cir. 1998) (award of royalty payments was proper following declaration by the district court that Plaintiff had authority to license new users to his copyright). "In deciding whether to award damages or require the parties to engage in further litigation the determinative factor is which solution will result in the most expeditious and just conclusion of the controversy." *Beacon Constr. Co. v Matco Elec. Co.*, 521 F.2d 392, 400 (2d Cir. 1975).

       The Liberty Entities argue that a cause of action for restitution is not appropriate where there is an express contract governing the subject matter of the claim. In *Gotham Ins. Co. v. GLNX, Inc.*, an insurance company sued the insured seeking a declaratory judgment that it was not obligated to defend or indemnify and sought reimbursement for costs incurred. No. 92 Civ. 6415, 1993 WL 312243 (S.D.N.Y. 1993). The Court held that the insurance company was entitled to a declaratory judgment and to recover the costs it incurred because it sent a letter reserving its rights to seek reimbursement in the event of a determination that it had no duty to defend the insured. *Id.* at 4. Similarly, here if U.S. Specialty receives a declaratory judgment, the Court would have broad authority to order restitution for any overpayments U.S. Specialty made that fall outside of the parties contractual intent because U.S. Specialty sent communications to the Liberty Entities reserving its rights to that effect.

       If I determine that U.S. Specialty is entitled to a declaratory judgment in its favor, following a notice and a hearing required by § 2202, then I may grant additional relief in the form of restitution so long as it results in "the most expeditious and just conclusion of the controversy." *Beacon Constr. Co.*, 521 F.2d at 399; *see also Axis Reinsurance Co. v. Bennett*, No. 07 Civ. 7924; 2008 WL 2600034, at *2 (S.D.N.Y. June 27, 2008) ("Generally, New York law provides that where coverage is disputed and a liability policy includes the payment of defense costs, insurers are required to make contemporaneous interim advances of defense expenses ..., subject to recoupment in the event it is ultimately determined no coverage was afforded.") (internal citation and quotation marks omitted). Given that U.S. Specialty has reserved its rights to seek restitution if it prevails on its declaratory judgment action, the Second Cause of Action is stricken as redundant.

---

judgment, a money judgment to recoup [any overpayment]." Tr. at 19-21.

afforded.") (internal citation and quotation marks omitted). Given that U.S. Specialty has reserved its rights to seek restitution if it prevails on its declaratory judgment action, the Second Cause of Action is stricken as redundant.

## IV. CONCLUSION

The Motion to Dismiss, Stay, or Transfer to the Central District of California (Dkt. # 13 and Dkt. # 24 ) is DENIED, and the Motion to Strike the Second Cause of Action (Dkt. # 22) is GRANTED. The pretrial scheduling order entered into on August 8, 2011 continues in full force and effect. The Clerk of Court is instructed to close these motions.

SO ORDERED.

New York, New York
November 7, 2011

HAROLD BAER, JR.
**United States District Judge**

8